**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DEBORAH THOMAS | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3:10-CV-01022 (JCH) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COMMUNITY RENEWAL TEAM, INC., | : | MARCH 24, 2011 |
| PLAN ADMINISTRATOR FOR THE | : | |
| COMMUNITY RENEWAL TEAM OF | : | |
| GREATER HARTFORD, INC. TAX | : | |
| SHELTERED ANNUITY PLAN and | : | |
| ING LIFE INSURANCE AND ANNUITY | : | |
| CO., | : | |
|    Defendants. | | |

**RULING RE: DEFENDANTS' MOTIONS TO DISMISS (Doc. Nos. 32 & 33)**

**I.      INTRODUCTION**

Plaintiff, Deborah Thomas ("Thomas"), brings this action against defendants, Community Renewal Team, Inc. ("CRT"), Plan Administrator for the Community Renewal Team of Greater Hartford, Inc. Tax Sheltered Annuity Plan (the "Plan"), and ING Life Insurance and Annuity Company ("ING"), under the Employee Retirement Income Security Act of 1974 ("ERISA"). Thomas claims that she is entitled to 100% of the benefits under the Plan because she is the sole beneficiary designated in the Plan.

On December 14, 2010, CRT filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)6) for failure to state a claim as a matter of law. (Doc. No. 32). On December 14, 2010, ING also moved to dismiss Thomas's Complaint on the same grounds. (Doc. No. 33). For the following reasons, the court grants both motions.

1

## II. BACKGROUND

This action arises out of a dispute regarding who is the proper beneficiary of the decedent Narsayah Tomby's ("Mr. Tomby") benefit packages from CRT.

Mr. Tomby was employed by CRT from April 1989 through his death in October 2009. While employed at CRT, Mr. Tomby elected to participate in the Plan. Mr. Tomby initially designated his sister, Thomas, as the sole beneficiary under the Plan.

Sometime between his election to participate in the Plan and his death, Mr. Tomby married Tarawatti Tomby ("Mrs. Tomby"). Under ERISA, when a plan participant dies, the benefits of the plan must go entirely to the surviving spouse of the plan participant unless certain conditions are satisfied. Thus, despite the fact that Mr. Tomby never selected Mrs. Tomby as his new beneficiary under the Plan, Mrs. Tomby replaced Thomas as the sole beneficiary on the day she became Mr. Tomby's wife.

Mr. Tomby died on October 7, 2009, while still married to Mrs. Tomby. After his death, Thomas made demands upon the defendants for a full distribution of Mr. Tomby's account under the Plan. Thomas alleged that she was entitled to 100% of the distributions of the Plan because she was originally named the beneficiary, and because Mrs. Tomby had abandoned Mr. Tomby within the meaning of local law.

The CRT and ING defendants claim that the provisions of ERISA, in combination with the express terms of the Plan, require that 100% of Mr. Tomby's account under the Plan be distributed to Mrs. Tomby, his surviving spouse. The defendants moved pursuant to Fed. R. Civ P. 12(b)(6) to dismiss Thomas's Complaint for failure to state a claim upon which relief can be granted.

### III. LEGAL STANDARD

Under Fed. R. Civ. P. 8(a), a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Though a complaint need not contain detailed factual allegations, the standard does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A pleading that offers only "labels and conclusions" or "a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555.

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "may consider documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or" documents "of which plaintiffs had knowledge and relied on in bringing suit." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993)). The court must make the "assumption that all the allegations in the complaint are true (even if doubtful in fact)," Twombly, 550 U.S. at 555, and draw "inferences from those allegations in the light most favorable to the plaintiff," Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,'" but rather requires something more than the "mere possibility of misconduct." Id. at 1950.

## IV. DISCUSSION

### A. ERISA

"ERISA is an intricate, comprehensive statute. Its federal regulatory scheme governs employee benefit plans, which include both pension and welfare plans." Boggs v. Boggs, 520 U.S. 833, 841 (1997). ERISA's provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Thus, ERISA preempts state law whenever state law comes into conflict with one of ERISA's provisions. See Boggs, 520 U.S. at 841 (holding that ERISA preempted a state law permitting the testamentary transfer of a nonparticipant spouse's community property interest in undistributed pension plan benefits).

"The statutory object of the qualified joint and survivor annuity provisions, along with the rest of § 1055, is to ensure a stream of income to surviving spouses." Id. at 843. A qualified pre-retirement survivor annuity ("QPSA") provides a surviving spouse with income when a vested plan participant dies before the annuity starting date. See 29 U.S.C. § 1055(a)(2). The surviving spouse annuity, at issue here, is "part of the statute's mandatory participation and vesting requirements." Boggs, 520 U.S. at 841; see also Lefkowitz v. Arcadia Trading Co., 996 F.2d 600, 603 (2d Cir. 1993). When ERISA was first enacted, pension plan participants had the discretion to decide whether

4

a plan offered a survivor's annuity to the participant's spouse. The Retirement Equity Act of 1984 eliminated that discretion and guaranteed that the surviving spouse would receive a survivor's annuity unless certain exceptions applied. Section 1055(c)(2) states that someone other than the surviving spouse can be named as the beneficiary only if:

> (A)(i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public, or
>
> (B) it is established to the satisfaction of a plan representative that the consent required under subparagraph (A) may not be obtained because there is no spouse, because the spouse cannot be located, or because of such other circumstances as the Secretary of the Treasury may by regulations prescribe.

The Treasury Secretary has promulgated regulations setting forth additional circumstances for which spousal consent is not required to waive the survivor's annuity. See 26 C.F.R. 1.401(a)-20, A-27. Those regulations state:

> If it is established to the satisfaction of a plan representative that there is no spouse or that the spouse cannot be located, spousal consent to waive the [qualified pre-retirement survivor annuity] is not required. If the spouse is legally incompetent to give consent, the spouse's legal guardian, even if the guardian is the participant, may give consent. Also, if the participant is legally separated or the participant has been abandoned (within the meaning of local law) and the participant has a court order to such effect, spousal consent is not required unless a QDRO[1] provides otherwise. Id.

---

[1] A qualified domestic relations order ("QDRO") is a limited exception to ERISA's non-alienation provision. A validly executed QDRO allows pension plan benefits to be divided pursuant to state law. Under ERISA, a "domestic relations order" is any "judgment, decree, or order" which (I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and (II) is made pursuant to a State domestic relations law . . . ." 29 U.S.C. § 1056(d)(3)(B)(ii). A domestic relations order is "qualified" if it "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a

5

B. <u>Thomas's Claim of Abandonment</u>

Thomas argues that she is entitled to a distribution of 100% of Mr. Tomby's account under the Plan. Thomas concedes that, although Mr. Tomby originally named her as the beneficiary of the Plan, Mrs. Tomby replaced her as beneficiary when she married Mr. Tomby. Thomas claims, however, that Mrs. Tomby abandoned Mr. Tomby prior to his death, within the meaning of local law, and that this abandonment terminated any requirement that Mrs. Tomby consent to the waiver of the survivor's annuity.

The court does not address whether Mrs. Tomby abandoned Mr. Tomby within the meaning of local law, because Thomas fails to plead that Mr. Tomby obtained a court order of abandonment. It is well settled in this Circuit that, in order for abandonment to constitute a waiver of a spouse's right to the benefits of the Plan, "the participant [must have] a court order to such effect." See <u>Board of Trustees v. Royce</u>, 238 F.3d 177 (2d Cir. 2001); <u>Mendez v. TIAA-CREF</u>, 982 F.2d 783 (2d Cir. 1992); <u>see also</u> <u>Zangara v. International Painters</u>, 2010 U.S. Dist. LEXIS 31244 (W.D.N.Y. Mar. 31, 2010). Failure to plead that a court order of abandonment has been obtained by the participant is, alone, grounds to grants the defendants' motions.

In order to satisfy this requirement, Thomas responds that a court order of abandonment may still be obtained from a probate court, since probate courts in Connecticut "routinely deal with the issue of abandonment posthumously." Pl.'s Mem. in

---

portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i)(I). There is QDRO at issue in this case.

6

Opp. at 9-10. Thomas further alleges that, if the probate court issues an order that Mr. Tomby was abandoned by Mrs. Tomby, then a different beneficiary may be designated under the Plan, without the consent of Mrs. Tomby. The court disagrees. Even if the probate court decides the issue of abandonment posthumously, the requirements for spousal waiver under ERISA would not be met for several reasons. As such, Thomas fails to plausibly allege that she is entitled to receive any portion of Mr. Tomby's account under the Plan.

First, a court order of abandonment must be obtained by the "participant" of the Plan. There was only one "participant" under the Plan: Mr. Tomby. It is undisputed that Mr. Tomby never obtained a court order declaring that he had been abandoned by his wife. A posthumous court order of abandonment obtained by Thomas would not satisfy this unambiguous requirement of the regulation, because Thomas was not the "participant" under the Plan. See Tkachik v. Comerica, 2006 U.S. Dist. LEXIS 92946 at* 28 (E.D. Mich. Dec. 26, 2006) aff'd 268 Fed. Appx. 443 (6th Cir. 2008).

Second, any waiver of the surviving spouse's interest must be made during the "applicable election period." 29 U.S.C. § 1055(c)(1)(A)(I). The "applicable election period" is defined as "the period which begins on the first day of the plan year in which the participant attains age 35 and *ends on the date of the participant's death*." 29 U.S.C. § 1055(c)(7)(B) (emphasis added). The applicable election period does not extend after the death of the participant.

Courts in the Fourth and Sixth Circuits have directly addressed this issue. In Davenport v. Davenport, 146 F. Supp. 2d 770 (M.D.N.C. 2001), for example, the defendant claimed that, if the state court issued a posthumous order that the plaintiff

7

abandoned the decedent, a different beneficiary could be designated under the Plan. The court disagreed and held that, "[g]iven that the statute requires the participant to make such an election before his death, which the participant did not do in this case, the [participant's] Estate, attempting to stand in the place of [the participant], is unquestionably precluded from electing to waive the surviving spouse's rights after the point in time that [the participant] would have been able to do so." Id. at 781; see also Tkachik v. Comerica, 268 Fed. Appx. 443, 444 (6th Cir. 2008) (affirming the district court's holding that "an attempt to change the beneficiary after the death of the participant is untimely.")  This court agrees, and finds that any waiver or change of the beneficiary made under section 1055 must be made during the applicable election period, which ends on the date of the participant's death.  A court order of abandonment obtained after the death of the participant would be untimely.

Finally, Thomas alleges that, in Connecticut probate courts, a court order of abandonment can only be obtained after the death of a spouse.  Even if that is true, for the reasons discussed supra, a court order of abandonment issued after the death of the plan participant does not constitute a valid waiver under ERISA.  Although application of ERISA's rigid provisions may occasionally yield harsh results, a plan participant remains free during his lifetime to designate someone other than his spouse as the beneficiary.  Here, Mr. Tomby could have prevented Mrs. Tomby's interest in the survivor's annuity from vesting in a number of ways.  Mr. Tomby could have obtained his wife's consent to name Thomas as his beneficiary under the Plan, pursuant to 1055(c)(2)(A)(i).  If he could not obtain her consent, Mr. Tomby could have obtained a court order of legal separation, or he could have divorced his wife.

Moreover, the fact that Mr. Tomby did not comply with ERISA's waiver requirements suggests that he did not necessarily intend to change the beneficiary, even after he was abandoned by his wife. See Davenport, 146 F. Supp. 2d at 781. If a court held that the beneficiary of a retirement plan governed by ERISA can be changed posthumously, or by someone other than the plan participant, the courts would be inundated with a slew of litigation concerning who the plan participant would or should have wanted the benefits of the plan to go to. ERISA does not allow the courts to step into the plan participant's shoes and make the beneficiary determination for him.

The defendants' Motions to Dismiss for failure to state a claim as a matter of law, therefore, are granted, because the allegations in Thomas's Complaint, read in the light most favorable to her, do not plausibly show that the waiver requirements of ERISA have been met.

**V.    CONCLUSION**

For the foregoing reasons, CRT's Motion to Dismiss (Doc. No. 32) and ING's Motion to Dismiss (Doc. No. 33) are **GRANTED**. The court also denies Thomas's request to stay the litigation in order to allow a probate court to adjudicate the issue of abandonment. A stay on these grounds would be useless, since a posthumous court order of abandonment would not be valid under ERISA for the reasons articulated above.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 24th day of March, 2011.

                                                      /s/ Janet C. Hall
                                          Janet C. Hall
                                          United States District Judge